Dawson v. Robbins.

ROBERT DAWSON, plaintiff in error, v. GARRETT W. ROB-
BINS, defendant in error.

*Error to Brown.*

It is only in cases where the verdict of the jury strikes the mind at first blush
as manifestly and palpably contrary to evidence, that the Court will, for that
reason, interfere to set it aside.

ASSUMPSIT, in the Brown Circuit Court, brought by the
defendant in error against the plaintiff in error. The cause
was heard before the Hon. Norman H. Purple and a jury, at
the September term, 1848, when a verdict and judgment
were rendered for the plaintiff for $55·09. The defendant
entered a motion for a new trial, which was overruled.

So much of the evidence as was material to the determin-
ation of this cause, will be found in the Opinion of this
Court.

*R. S. Blackwell,* for the plaintiff in error.

*J. S. Bailey,* and *C. A. Warren,* for the defendant in error.

Courts will not disturb the verdict of a jury, if the facts
are fairly submitted.

Unless the verdict is manifestly against the evidence, and
even then but seldom, if it appear from all the evidence that
substantial justice has been done. 1 Scam. 128, 490, 532;
2 do., 350, 354, 358; 2 Gilm. 618.

The Opinion of the Court was delivered by

TRUMBULL, J. Robbins sued Dawson in *assumpsit* to re-
cover for work and labor done in building the machinery of
a steam mill. The declaration is general, and contains only
the common counts. Dawson, besides the pleas of *non-
assumpsit* and set-off, upon which issues were taken, also
pleaded that the work was done under a special contract,
upon which plea issue was also joined.

The issues were submitted to a jury, who found for the plaintiff below, and assessed his damages at $55·09. Dawson moved for a new trial, which motion was overruled, and judgment rendered for the amount of the verdict.

The only point in the case is, whether the Circuit Court erred in overruling the motion for a new trial, and this depends upon the fact whether Dawson succeeded in proving that the work was done under a special contract for a stipulated sum. If he did, the verdict is wrong, for the amount of the set-off as admitted by Robbins upon the trial, exceeds the amount agreed to have been paid according to the special contract, if there was one.

The bill of exceptions sets out all the testimony in the case, but it is unnecessary to repeat it here. The declarations and admissions of Robbins, made at different times while the work was progressing, and testified to by different witnesses, are the only evidence tending to show a special contract. The two witnesses introduced by Dawson, who testified most particularly to the statements of Robbins, both state that Robbins told them, at the same time that he admitted he had taken the job for $500, that he had refused to sign a written contract, because it did not truly represent the agreement. One of Dawson's witnesses testified that "he asked Robbins what he was to get for doing the work on Dawson's mill. Robbins replied that he did not know ; that there was a good deal more work to be done than had been represented by Dawson; that he had agreed to do the work for $500, but had refused to sign the contract, on account of Dawson's misrepresentations in relation to the amount of work to be done."

Robbins also proved by a witness that while the work was progressing upon the mill, the hands refused to work unless their wages were secured to them ; that in consequence of this, Dawson and Robbins had a conversation, in which Dawson agreed to pay the hands from that time, and also to guarantee to them their pay for what they had done, if the job amounted to that sum ; and if the parties could not agree, they would leave it to arbitrators. What was to be left to

arbitrators, is, perhaps, not very clear from the evidence. The most reasonable conclusion is, that it was to be left to arbitrators to determine what the job came to, in case the parties could not agree about the price ; and yet such could not be the case, if $500 was agreed upon as the price, for in that event, there would be nothing for the arbitrators to determine.

It moreover appears from the account of Dawson that at the time of this agreement to pay the hands for the future work, he had already advanced more than $500. We think all these circumstances might well have justified the jury in finding either that no special contract was never perfected between the parties—for one was doubtless talked about —or if a special contract ever existed, that it was subsequently rescinded.

We have not referred to the evidence with a view to show that the weight of testimony is in favor of the verdict as rendered by the jury; on the contrary, there is much evidence in the record to show that there was a special contract between the parties, that the job was to be done for $500; but we have repeated part of the proof to show that there was some evidence tending to show that the work was not done under a special agreement, and where the testimony is conflicting, and the jury might without any palpable or manifest disregard of the evidence, have rendered the verdict they did, and the Circuit Court has refused to set it aside, it is not the province of this Court to disturb it.

It is only in cases where the verdict of the jury strikes the mind at first blush as manifestly and palpably contrary to evidence, that the Court will for that reason interfere to set it aside.

The judgment of the Circuit Court is affirmed with costs.

*Judgment affirmed.*